306 Ga. 647
FINAL COPY

S19A0613.  THE STATE v. HOLMES.

WARREN, Justice.

This criminal appeal — brought by the State from the grant of a new trial — is the second appearance of this case before this Court. In June 2015, Quantravious Antwan Holmes was tried before a jury and was convicted of malice murder and possession of a firearm by a convicted felon in connection with the shooting death of Todd Burkes.  In November 2017, the trial court granted Holmes's motion for new trial.  The State appealed and Holmes cross-appealed.  This Court affirmed in the cross-appeal, vacated in the State's direct appeal, and remanded the case to the trial court with direction for further consideration, under a proper legal analysis, of the grounds on which the grant of a new trial was based.  *State v. Holmes*, 304 Ga. 524 (820 SE2d 26) (2018).

In the cross-appeal, this Court held that the evidence was legally sufficient to support Holmes's convictions and summarized

the evidence in the light most favorable to the jury's verdicts as follows:

The murder occurred on a pedestrian bridge in downtown Atlanta at approximately 3:30 a.m. on October 22, 2013. Earlier in the evening, Holmes and Burkes were seen handling a "western style" revolver. They were seen together near the Greyhound Bus terminal, and Holmes was wearing a dark-colored hoodie with white stripes and a large white logo design on the front. A witness who knew both Holmes and the victim told investigators that they were arguing over a woman they were both interested in dating. At trial, the witness denied the men were arguing or that she saw them with a pistol. She explained that she made these statements to the investigators in hopes of pleasing the police since she was facing a criminal charge. A second witness, who was a convicted felon, testified he saw Holmes and the victim arguing earlier in the day and that he also saw them passing around a revolver.

The two men were also seen in the early morning hours at a restaurant near the Five Points MARTA station, and contradictory evidence was presented about whether they were still arguing. They were last seen together at the entrance to the pedestrian bridge. Burkes' body was discovered on the bridge with several gunshot wounds that appeared to have been fired from a revolver that was never recovered. Also, Burkes' phone and wallet were missing. A resident of a nearby third-floor condo heard shots fired around 3:30 a.m. and then saw a person wearing a gray hoodie running away from the direction of the bridge. That witness could not identify the person, however, and did not notice any distinguishing markings on the hoodie. After the shooting, Holmes left Atlanta for

New York.

*Holmes*, 304 Ga. at 525-526.  Notwithstanding that "[e]vidence was presented that a person named [Colin] Hamilton had possession of the victim's phone shortly after the time of the shooting," this Court held that the jury was authorized to find that the circumstantial evidence was sufficient to exclude every reasonable hypothesis other than guilt and to find Holmes guilty beyond a reasonable doubt under the standard of *Jackson v. Virginia*, 443 U.S. 307, 324 (99 SCt 2781, 61 LE2d 560) (1979).  *Holmes*, 304 Ga. at 526-527.  This Court further explained that, in addition to Holmes's presence near the scene of the crime and his motive, other evidence authorized the jury to find that "Holmes was in possession of a weapon hours before the shooting that was similar to the type of gun from which the fatal bullet was fired.  Additionally, a person dressed similarly to Holmes was seen fleeing the scene immediately after shots were fired."  Id. at 526-527.

With respect to the direct appeal, this Court explained that the trial court had granted a new trial on two grounds: first, "on the

3

ground that the court had erred by denying Holmes permission to enter into evidence portions of the recorded and transcribed statement of . . . Hamilton, who was not available to appear as a witness at trial," and second, "on the general grounds as the 'thirteenth juror.'"[1] *Holmes*, 304 Ga. at 524-525. As to the first ground, this Court held that the trial court did not properly apply the rules of evidence at the motion-for-new-trial stage when it determined that it had erred in denying Holmes permission to introduce only a portion of Hamilton's statement. Id. at 527, 530, 531. As a result, this Court vacated the grant of a new trial on this ground and directed the trial court on remand "to apply the appropriate evidentiary standard to its analysis of whether, as

---

[1] As we explained in the direct appeal, the grounds set forth in OCGA §§ 5-5-20 and 5-5-21, which "are commonly known as the 'general grounds' for new trial," authorize "the trial judge to sit as a 'thirteenth juror' and to exercise his or her discretion to weigh the evidence on a motion for new trial alleging these general grounds." *Holmes*, 304 Ga. at 531. Even if the evidence is "sufficient to sustain a conviction (under the *Jackson v. Virginia* standard), a trial judge may grant a new trial if the verdict of the jury is 'contrary to . . . the principles of justice and equity,' OCGA § 5-5-20, or if the verdict is 'decidedly and strongly against the weight of the evidence.' OCGA § 5-5-21." *State v. Hamilton*, 299 Ga. 667, 670 (791 SE2d 51) (2016) (citation and punctuation omitted).

4

Holmes urges, Hamilton's statement was admissible under the residual exception to hearsay," id. at 530, and "if the trial court again concludes at least some of Hamilton's statement is admissible," to "next consider whether the court's pre-trial ruling that the State could require the additional portion of the statement to be introduced contemporaneously with the portion introduced by Holmes was correct under OCGA § 24-1-106." Id. at 531. As for the second ground, the trial court granted a new trial on the *general grounds*, but based this second ground in part on its conclusion that it had made an *evidentiary error* with respect to Hamilton's statements, as described above. Id. at 531-532. Because this legal basis did not comply with the requirements of OCGA §§ 5-5-20 and 5-5-21 for granting a new trial on the general grounds, this Court vacated the grant of the motion for new trial on the general grounds and directed the trial court to consider the general grounds "after applying the appropriate discretionary standard." Id. at 532.

At a short hearing on remand, Holmes requested that the trial court grant a new trial again on the general grounds and suggested

that the admissibility of Hamilton's statement could later be addressed as a pre-trial matter. The prosecutor asked the trial court to deny the motion for new trial on every ground. The parties spent most of their time at the hearing arguing about the admissibility of Hamilton's statement, but the trial court later adopted a proposed order submitted by Holmes that granted his motion for new trial on the general grounds. In that order, the trial court recounted the evidence in this way:

> Todd Burkes was killed on a pedestrian bridge in downtown Atlanta on October 22, 2013. The evidence at trial showed that Burkes had been downtown with his friend, Quantravious Holmes. They were seen together on video, laughing and joking, outside of the Waffle House shortly before the shooting. Around 3:30 a.m., a man named Cody Greer heard gunshots from a nearby bridge and saw someone running away from the bridge. He noted that that person was wearing a gray hoodie but did not notice any emblem on it. Mr. Holmes was wearing a gray hoodie with a big, white emblem on it that night.
>
> A firearm was not recovered, but the testimony at trial was that a revolver had been used. One witness, Debra Dunbar, testified that she had been with Mr. Holmes and Mr. Burkes earlier in the evening. During the police investigation, Ms. Dunbar said she saw Mr. Holmes with a revolver, but at trial, she testified that she did not actually see him with a revolver and just said that to get out of criminal charges. Christopher Odister, a

multiple-time convicted felon, testified that he saw Mr. Holmes and Mr. Burkes pass around a pistol much earlier in the day and admitted that he was high that night. Like Ms. Dunbar, he also testified that Mr. Burkes and Mr. Holmes were friends.

Mr. Burkes's phone and wallet were missing, leading the State to argue that someone had killed him as part of a robbery. Phone records admitted at trial established that Mr. Burkes's phone was used after the murder to call Colin Hamilton's number. At trial, Sandra Thomas testified that her friend, Colin Hamilton, called her that night from Mr. Burkes's phone.

After reviewing the law governing new trials on the general grounds, the trial court concluded that — having "considered the conflicts in the evidence, the credibility of witnesses, the demeanor of witnesses during trial, and the weight of evidence in this case" — it "hereby exercises its discretion as the 'Thirteenth Juror' in Mr. Holmes's case, and having done so is satisfied that [he] is entitled to a new trial." It is from this second order granting a new trial that the State now appeals, contending that the trial court "manifestly abused its discretion in precipitously granting a new trial as the 13th juror" after remand. Finding no error, we affirm.

1. The State first argues that the trial court ignored this

Court's direction to reconsider the admissibility of Hamilton's statement. We disagree.

As an initial matter, the State's argument fails to acknowledge that this Court's direction regarding the admissibility of Hamilton's statement pertained to one of two alternative grounds for the initial grant of a new trial. The trial court was therefore authorized on remand to grant a new trial on either alternative ground, so long as it did not repeat either of the errors that it made in its initial grant of a new trial (or make any new ones). And, indeed, that is what the trial court did here: on remand, it granted a new trial based only on the general grounds, without even mentioning the evidentiary issues that were a subject of Holmes's first appeal in this case. Under these circumstances, the trial court was not required to reconsider the admissibility of Hamilton's statement in order to grant a new trial on the general grounds. Cf. *State v. Cash*, 298 Ga. 90, 97 n.6 (779 SE2d 603) (2015) (because the trial court did not abuse its discretion in granting a new trial on the general grounds, this Court did not need to address the State's argument that the

8

trial court erred in granting a new trial based on the ineffective assistance of trial counsel); but cf. *State v. Jackson*, 295 Ga. 825, 826-827 (764 SE2d 395) (2014) (citing OCGA § 5-6-10 to hold that, where this Court had reversed the grant of a new trial on the *sole* ground pursued by the defendant, the trial court could not grant a new trial on the general grounds when the defendant had abandoned all other grounds and this Court had given no direction for the trial court to take further action). The State's argument therefore fails.

2. The State also argues that the trial court acted hastily and out of pique, and not with the cautious discretion it was authorized to exercise as the thirteenth juror. In support of this argument, the State points to the trial court's quick requests for a proposed order — directed only to defense counsel near the beginning and the end of the hearing on remand — even though one of defense counsel's arguments was supposedly the same as an argument this Court had already rejected in the first appeal. We again disagree.

It is well established that a trial court may request and then

adopt a proposed order from one party. See *Brockman v. State*, 292 Ga. 707, 713-714 (739 SE2d 332) (2013); *Rafi v. State*, 289 Ga. 716, 721 (715 SE2d 113) (2011). Doing so does not itself demonstrate an absence of cautious discretion. Indeed, once entered, the findings in an adopted final order "are those of the court and may be reversed only if clearly erroneous"; "even orders prepared ex parte do not violate due process and should not be vacated unless a party can demonstrate that the process by which the judge arrived at them was fundamentally unfair." *Brockman*, 292 Ga. at 713-714 (citations and punctuation omitted) (holding that the trial court's adoption of a proposed order verbatim did not amount to either a denial of due process or evidence that the trial court failed to exercise its discretion under OCGA §§ 5-5-20 and 5-5-21).

Here, prior to the first appeal in this case, the parties had already fully briefed, and the trial court had already heard, arguments relating to Holmes's motion for new trial on the general grounds. The record shows that at the hearing on remand, the trial court allowed the State's prosecutor to present argument and did not

curtail it. The record further shows that the prosecutor argued primarily about the admissibility of Hamilton's statement and made only two short statements related to the State's request for the trial court to deny a new trial on the general grounds. The trial court also granted the prosecutor's request to submit a proposed order. The trial judge had presided over the entire trial and the original proceedings on motion for new trial, and thus had sufficient time and familiarity with the case to formulate his thoughts as the thirteenth juror. The State "has presented no evidence that the trial court did not fully review the evidence and consider [the State's] claims or that the process by which the trial court arrived at its findings was fundamentally unfair." *Brockman*, 292 Ga. at 714.

More specifically, the State points to nothing in the record on remand that supports its claim that the trial court prejudged the case because of carelessness or for any other reason. See *Willis v. Willis*, 288 Ga. 577, 581-582 (707 SE2d 344) (2011) (rejecting claim that the trial court prejudged the appellant because of certain negative personal beliefs when there was "no basis in the record for

11

such assertions"). And even assuming, without deciding, that defense counsel did repeat an argument on remand that this Court rejected in Holmes's first appeal, this Court presumes—absent record evidence to the contrary—that "the trial court understood the nature of its discretion and exercised it." *Wilson v. State*, 302 Ga. 106, 108 (805 SE2d 98) (2017) (citation and punctuation omitted). See also *Brooks v. State*, 301 Ga. 748, 752 (804 SE2d 1) (2017) ("Absent evidence to the contrary, we presume that trial judges, as public officers, follow the law in the exercise of their statutory duties and authority."). Moreover, the trial court's written order on remand does not reveal any improper basis for the grant of a new trial on the general grounds, and instead shows that the court properly exercised its discretion. We "thus presume, in the absence of affirmative evidence to the contrary[,] that the trial court did properly exercise such discretion." *Wilson*, 302 Ga. at 108.

3. The State asks this Court again to vacate the trial court's judgment and remand the case with direction to comply fully with the direction this Court provided in Holmes's direct appeal. As

12

discussed above, however, the trial court did not repeat its prior errors on remand when it granted a new trial on the general grounds, and we have not identified any reason for another remand of this case.

The State does assert, however, that this is not an exceptional case where the evidence preponderates heavily against the verdict, and that the grant of a new trial therefore constituted a "manifest abuse of discretion." It is true that, although the trial judge has a "broad" and "substantial" discretion to sit as a "thirteenth juror," that discretion "should be exercised with caution (and) invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *State v. Hamilton*, 299 Ga. 667, 670 (791 SE2d 51) (2016) (citation and punctuation omitted). On appeal, however, this Court reviews a grant of a new trial only for an abuse of discretion. See OCGA § 5-5-50 ("The first grant of a new trial shall not be disturbed by an appellate court unless the appellant shows that the judge abused his discretion in granting it and that the law and facts require the verdict notwithstanding the judgment of the

13

presiding judge."); *Hamilton*, 299 Ga. at 670-671 ("An appellate court will not disturb the first grant of a new trial based on the general grounds unless the trial court abused its discretion in granting it and the law and the facts demand the verdict rendered.").

Here, the record shows that, after presiding over trial and two motion-for-new-trial hearings, the trial court considered the evidence presented—including conflicts in the evidence, the credibility and demeanor of the witnesses during trial, and the weight of the evidence—and granted a new trial by exercising its discretion as the "thirteenth juror." See *Hamilton*, 299 Ga. at 670 (in exercising its broad discretion as the "thirteenth juror," the trial court "must consider some of the things that [it] cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence" (citation and punctuation omitted)). Having reviewed the record ourselves, and bearing in mind the standard of review set forth in OCGA § 5-5-50, we cannot say that the trial court abused its substantial discretion in granting Holmes a new trial on

the general grounds.  See id. at 671; *Cash*, 298 Ga. at 97; *State v. Harris*, 292 Ga. 92, 95 (734 SE2d 357) (2012).

*Judgment affirmed.  All the Justices concur.*

DECIDED SEPTEMBER 3, 2019.
Murder. Fulton Superior Court. Before Judge Goger.
*Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder,*

*Marc A. Mallon, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellant.

*Suzanne M. Tevis, Tamara N. Crawford*, for appellee.