**FOURTH DIVISION**
**DILLARD, P. J.,**
**RICKMAN and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**April 3, 2020**

# In the Court of Appeals of Georgia

A20A0279. GRESHAM v. THE STATE.

DILLARD, Presiding Judge.

Following trial, Nikario Gresham was convicted of kidnapping with bodily injury, home invasion, two counts of aggravated assault, two counts of armed robbery, burglary, theft by receiving, two counts of false imprisonment, and possession of a firearm during the commission of a felony. On appeal, Gresham argues that the trial court erred in (1) failing to conduct a "thirteenth juror" review when it denied his motion for new trial; (2) denying his request to strike a member of the jury pool for cause; (3) admitting an impermissibly prejudicial photograph into evidence; (4) imposing separate sentences on the two armed-robbery convictions; and (5) failing to merge several of his other convictions for sentencing purposes. For the reasons set forth *infra*, we vacate the judgment and remand the case with direction.

Viewed in the light most favorable to the jury's verdict,[1] the record shows that in the early evening of July 22, 2015, Bill and Andrea Burk were at their home, located in a golf-course subdivision in Rome, Georgia, getting ready to go out to dinner. While Andrea finished getting ready, Bill walked outside to his truck to smoke a cigarette and wait for her. Suddenly, he was struck on the back of his head and fell to his knees. At that point, a man wearing a camouflage hat, who Bill did not recognize, put his hand around Bill's throat, pointed a handgun at his head, and ordered Bill not to look at him. That man and another assailant, who was similarly armed with a handgun, then dragged Bill back inside the house to his kitchen. Bill screamed for Andrea to run, but before she could do so, one of the men pointed his handgun at her and demanded that she get on the floor. The men tied Andrea's hands and feet with twine and bound Bill's hands and feet with a bed sheet. They then took Andrea's mobile phone and jewelry and cash from Bill's wallet, and demanded that Bill tell them where his safe and guns were located. Not owning either, Bill—who operated a construction company and was often paid in cash—told the assailants that he had cash in an envelope placed in a bathroom drawer underneath his dresser. A few minutes later, Andrea heard the backdoor to the house close; and believing the

---

[1] *See, e.g.*, *Muse v. State*, 323 Ga. App. 779, 780 (748 SE2d 136) (2013).

two intruders had fled, she untied herself, used a knife to cut the sheets binding Bill, and then called the police.

Meanwhile, one of the Burks' neighbors was walking his dog along one of the golf-cart paths in the neighborhood, when he saw an older model, dark-colored vehicle parked on the street with its engine hood up, a young woman standing next to it, and a man sitting in the front seat. The neighbor asked the young woman if she needed any assistance, but she responded that she had help "on the way," so the neighbor continued on his walk. Several moments later, the neighbor saw two men run past him and jump into the parked vehicle, which immediately drove away. A few minutes after that, the neighbor saw several police vehicles speeding through the neighborhood. And realizing the police might have been looking for the people in the car that he had seen only a few minutes earlier, the neighbor flagged down officers and gave them a description of the vehicle. At the same time, another officer arrived at the Burks' house, at which point Andrea provided him with a description of the assailants, including that one of the men was wearing a camouflage hat and the other had his hair in dreadlocks.

Based on the descriptions and information provided by the Burks and their neighbor, police began looking for the suspects' vehicle on nearby roads and

highways but were unsuccessful. But later that evening, one of the investigating officers received a phone call from officers with the Summerville Police Department in nearby Chattooga County, informing him that they stopped the subject vehicle and were detaining its occupants—identified as Nikario Gresham, Ryederius Ferrell, Adrian Mitchell, and Alicia Tindle. Consequently, the investigating officer drove to Chattooga County to arrange for the transport of the suspects and their vehicle back to Rome. Upon his arrival, Summerville officers informed him that a search of the occupants resulted in the recovery of a large amount of cash. Later, after the vehicle had been transported back to Rome, another investigator searched it and recovered a large amount of cash hidden in one of Gresham's shoes, a camouflage-style hat, twine, bed sheets, jewelry, and mobile phones (including Andrea Burk's iPhone). The investigator also found two handguns hidden under the hood of the vehicle, one of which was partially spray painted red. And in a later search of the other mobile phone found in the vehicle, the investigator discovered a digital photograph of Gresham brandishing a red-painted handgun.

Thereafter, the State charged the four defendants, via the same indictment, with one count of kidnapping with bodily injury, kidnapping, home invasion, two counts of aggravated assault, two counts of armed robbery, burglary, theft by receiving, two

counts of false imprisonment, and possession of a firearm during the commission of a felony. The State also charged Gresham and Ferrell each with one count of possession of a firearm by a convicted felon. Prior to trial, Gresham filed a motion in limine, seeking to exclude the photograph of him brandishing the red-painted handgun on the ground that its prejudicial effect far outweighed its probative value. But in a hearing shortly before his trial commenced, the trial court denied his motion.

The case then proceeded to trial, during which the State tried Gresham and Ferrell jointly and presented the foregoing evidence. The State also presented expert testimony that Ferrell's DNA was found on the camouflage hat and a fingerprint on Andrea Burk's mobile phone matched Gresham's fingerprint. Additionally, Mitchell and Tindall testified for the State and claimed that they drove Gresham and Ferrell to the Burks' neighborhood, with Gresham providing directions, and that they waited with the vehicle while Gresham and Ferrell walked to the Burks' home. At the conclusion of the trial, the jury convicted Ferrell and Gresham on all counts, and the trial court sentenced Gresham to life in prison plus five years.

Subsequently, Gresham filed a motion for new trial, arguing, *inter alia*, that the evidence was insufficient to support the two kidnapping convictions, the trial court erred in denying his request to strike a prospective juror for cause, the jury's verdict

was contrary to the principles of justice and equity and was strongly against the weight of the evidence, and several of his convictions should have merged for sentencing purposes. The State filed a response, and, ultimately, the trial court issued an order acquitting Gresham as to the charge alleging the kidnapping of Andrea Burk in Count 2 of the indictment but, otherwise, denying his motion. This appeal follows.[2]

1. Gresham argues that the trial court failed to conduct a "thirteenth juror" review when—with the exception of the kidnapping conviction in Count 2—it denied his motion for new trial.[3] We agree.

On a motion for new trial, even if the evidence is legally sufficient to sustain a conviction, the trial court may order a new trial if the "verdict of a jury is found

---

[2] In its order concerning Gresham's motion for new trial, the trial court initially ruled simply to grant his motion to the kidnapping charge in Count 2. Gresham filed a notice of appeal, but we dismissed the case, holding that "[w]hen the trial court grants a criminal defendant's motion for new trial, the case is not final for purposes of filing a direct appeal." *Gresham v. State*, 350 Ga. App. 243, 243 (828 SE2d 634) (2019). Thereafter, the trial court amended its order and acquitted Gresham of the kidnapping charge in Count 2, and Gresham filed a new notice of appeal.

[3] Although Gresham has not challenged the sufficiency of the evidence supporting his remaining convictions, we have reviewed the record and find the evidence sufficient to enable a jury to conclude beyond a reasonable doubt that he was guilty of all the crimes of which he was convicted. *See Jackson v. Virginia*, 443 U.S. 307, 319 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979).

contrary to evidence and the principles of justice and equity"[4] or if the verdict is "decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding."[5] Importantly, these statutes afford the trial court broad discretion to sit as a "thirteenth juror" and "weigh the evidence on a motion for new trial alleging these general grounds."[6] And in exercising discretion as the "thirteenth juror," the trial court must consider some of the things that it cannot when "assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence."[7] But the trial court's discretion to grant a new trial under these circumstances "should be exercised with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict."[8] Furthermore,

---

[4] OCGA § 5-5-20.

[5] OCGA § 5-5-21.

[6] *Holmes v. State*, 306 Ga. 524, 528 (2) (832 SE2d 392) (2019) (punctuation omitted); *accord Walker v. State*, 292 Ga. 262, 264 (2) (737 SE2d 311) (2013); *Conley v State*, 329 Ga. App. 96, 100 (2) (763 SE2d 881) (2014).

[7] *Wiggins v. State*, 330 Ga. App. 205, 210 (c) (767 SE2d 798) (2014) (punctuation omitted); *accord White v. State*, 293 Ga. 523, 524 (2) (753 SE2d 115) (2013).

[8] *Wiggins*, 330 Ga. App. at 210 (c) (punctuation omitted); *accord White*, 293 Ga. at 524 (2).

we presume, "in the absence of affirmative evidence to the contrary, that the trial court properly exercised its discretion [under] OCGA §§ 5-5-20 and 5-5-21."[9] Nevertheless, when the record reflects that the trial court "reviewed the motion for new trial only for legal sufficiency of the evidence, the trial court has failed to exercise such discretion."[10]

In this matter, Gresham explicitly argued in his motion for new trial that the jury's verdict was contrary to the principles of justice and equity and was strongly against the weight of the evidence. Thus, the trial court had an *affirmative* duty to "exercise its discretion and weigh the evidence to determine whether a new trial as to his convictions . . . was warranted."[11] But while the trial court cursorily noted in its order that Gresham asserted the "standard grounds" in his motion for new trial, nothing in the order "indicates to us that the trial court performed its duty to exercise

---

[9] *Holmes*, 306 Ga. at 528 (2) (punctuation omitted).

[10] *Id.*; *accord White*, 293 Ga. at 525 (2).

[11] *Brockman v. State*, 292 Ga. 707, 713 (4) (739 SE2d 332) (2013) (punctuation omitted) (emphasis supplied); *see Lavertu v. State*, 325 Ga. App. 709, 711 (1) (754 SE2d 663) (2014) (holding that "the law imposes upon the trial court an affirmative duty to exercise its discretion and weigh the evidence to determine whether a new trial is warranted"); *Hartley v. State*, 299 Ga. App. 534, 540 (3) (683 SE2d 109) (2009) (same).

8

its discretion and weighed the evidence in its consideration of the general grounds."[12] Indeed, although the trial court's lengthy order addressed in significant detail all of Gresham's other arguments, including his argument that the evidence was insufficient to support his two separate kidnapping convictions, it made no further "reference to the general grounds, gave no indication that the trial court had considered or reweighed the evidence presented at trial, and did not suggest that the trial court had exercised its discretion [under] OCGA §§ 5-5-20 and 5-5-21."[13] And given these circumstances, "we can conclude only that the trial court failed to apply the proper standard in assessing the weight of the evidence as requested by [Gresham] in his motion for new trial."[14] Accordingly, we vacate the trial court's "denial of the motion

---

[12] *White*, 293 Ga. at 525 (2) (punctuation omitted); *accord Whitmire v. State*, 343 Ga. App. 282, 287-88 (2) (807 SE2d 46) (2017); *Atkins v. State*, 342 Ga. App. 849, 852 (2) (805 SE2d 612) (2017).

[13] *Holmes*, 306 Ga. at 528 (2).

[14] *White*, 293 Ga. at 525 (2) (punctuation omitted); *see Holmes*, 306 Ga. at 528 (2) (holding that although the trial court addressed defendant's sufficiency of the evidence challenge, because the court's order made no reference to the general grounds, gave no indication that it considered or reweighed the evidence presented at trial, and did not suggest that it exercised its discretion under OCGA §§ 5-5-20 and 5-5-21, the court failed to exercise its discretion as the thirteenth juror in denying defendant's motion for new trial); *Gomillion v. State*, 296 Ga. 678, 680-81 (2) (769 SE2d 914) (2015) (holding that nothing in its order indicated that the trial court exercised its discretion as the "thirteenth juror"); *Cook v. State*, 351 Ga. App. 845,

for new trial, and we remand [this case] for the trial court to apply the proper standard

to the general grounds and to exercise its discretion to sit as a 'thirteenth juror'

[under] OCGA §§ 5-5-20 and 5-5-21."[15]

---

846-47 (1) (833 SE2d 544) (2019) (noting that given the wording of the trial court's order and its finding with regard to the sufficiency of the evidence, "it is clear" the trial court failed to properly exercise its discretion as the "thirteenth juror" in denying defendant's motion for new trial); *Whitmire*, 343 Ga. App. at 287-88 (2) (finding that although the trial court's lengthy detailed order addressed the sufficiency of the evidence, nothing in its order denying defendant's motion for new trial indicated that the court performed its duty to exercise its discretion and weighed the evidence in its consideration of the general grounds); *Atkins*, 342 Ga. App. at 852 (2) (holding that although the trial court acknowledged that defendant sought a new trial based on general grounds, trial court only addressed the sufficiency of the evidence, and nothing in its order suggested that it actually considered the general grounds in denying defendant's motion); *Wiggins*, 330 Ga. App. at 802-03 (c) (holding that although trial court's order denying defendant's motion for new trial cited to OCGA §§ 5-5-20 and 5-5-21, there was no evidence that court exercised discretion, weighed the evidence, and determined as the "thirteenth juror" whether the verdict was against the great weight of the evidence or offended the principles of justice and equity). *Cf. Jones v. State*, 339 Ga. App. 95, 104 (4) (791 SE2d 625) (2016) (holding that because nothing in the trial court's order indicated it did not consider the defendant's conviction as the "thirteenth juror," this Court will not presume otherwise).

[15] *White*, 293 Ga. at 525-26 (2) (punctuation omitted); *see Holmes*, 306 Ga. at 528 (2) (holding that because the trial court failed to exercise its discretion under OCGA §§ 5-5-20 and 5-5-21 in considering defendant's motion for new trial, judgment must be vacated and the case remanded for proper consideration); *Whitmire*, 343 Ga. App. at 288 (2) (same).

2. In light of our decision to vacate the denial of the motion for new trial and remand this case for further proceedings, it is unnecessary for us to address Gresham's remaining claims of error at this time.[16]

*Judgment vacated and case remanded with direction. Rickman and Brown, JJ., concur.*

---

[16] *See White*, 293 Ga. at 526 (2) n. 5 (declining to address remaining claims of error, when the denial of defendant's motion for new trial was vacated and the evidence was legally sufficient to support the convictions); *Whitmire*, 343 Ga. App. at 288 (3) (same).